Argued and submitted June 24, reversed September 28, 1994, petition for review
allowed February 7, 1995 (320 Or 567)
See later issue Oregon Reports

In the Matter of the Compensation of
Joyce A. Christensen, Claimant.

## SAIF CORPORATION
and Sams Food Store,
*Petitioners,*

*v.*

Joyce A. CHRISTENSEN,
*Respondent.*

(92-15365; CA A82091)

882 P2d 125

James W. Moller, Special Assistant Attorney General,
argued the cause for petitioners. With him on the brief were
Theodore R. Kulongoski, Attorney General, and Virginia L.
Linder, Solicitor General.

Edward Harri argued the cause for respondent. On the
brief were Francesconi & Busch, PC, and Floyd H. Shebley.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

## ROSSMAN, P. J.

SAIF seeks review of an order of the Workers' Compensation Board holding that its procedural obligation to begin paying benefits for claimant's temporary total disability began November 11, 1991. The Board's determination is based on its conclusion that an insurer has an affirmative obligation, in the processing of an aggravation claim, to seek medical verification of a claimant's inability to work. We conclude that the Board erred in holding that SAIF had a procedural obligation to begin paying benefits and reverse.

Claimant compensably injured her left elbow and forearm in 1985 while working for employer. The claim was closed in 1988 with an award of permanent partial disability. In 1990, claimant's attending physician, Dr. Long, referred her to Dr. Layman, a surgeon, for consultation. Layman diagnosed cubital tunnel syndrome and radial tunnel syndrome of the left arm, and recommended surgery. He became claimant's attending physician in October, 1990.

In February, 1991, SAIF denied an aggravation claim for the conditions diagnosed by Layman. The claim was ordered accepted by a referee on October 30, 1991. SAIF did not contest that order.

In the meantime, claimant had worked for Burger King from 1987 through early 1991, and for a ceramic tile manufacturer until March, 1991, when she was laid off. She has not worked since that time.

On November 11, 1991, Layman again requested authorization from SAIF to perform surgery. SAIF denied the request. A referee ordered that SAIF pay for the surgery and also assessed an attorney fee, pursuant to ORS 656.382(1), for SAIF's failure to comply with the first referee's order. SAIF did not appeal the order.

On February 12, 1992, in response to interrogatories by claimant's counsel, Long, who was not then claimant's attending physician, expressed the view that claimant was unable to work due to her worsened condition and that she should be authorized time loss until after the surgery.

In August and October, 1992, Layman again requested authorization for surgery. In November, 1992,

claimant's counsel requested that SAIF process the claim for aggravation and that it begin paying time loss.

In February, 1993, SAIF closed the claim without an award for time loss or permanent disability. It is not clear from this record whether claimant has had her surgery, but it is assumed that she has, in the light of SAIF's closure of the claim. The only issue on review concerns when, if ever, SAIF became obligated, from a procedural standpoint, to begin paying benefits for temporary disability. This case is not about whether claimant is substantively entitled to benefits for temporary disability. SAIF contends on review that it never had an obligation to begin paying benefits, because it never received notice from claimant's attending physician that claimant was unable to work.

In the context of an initial claim, ORS 656.262(4) provides:

"(a) The first installment of compensation shall be paid no later than the 14th day after the subject employer has notice or knowledge of the claim. * * *

"(b) Temporary disability compensation is not due and payable for any period of time for which the insurer or self-insured employer has requested from the worker's attending physician verification of the worker's inability to work resulting from the claimed injury or disease and the physician cannot verify the worker's inability to work, unless the worker has been unable to receive treatment for reasons beyond the worker's control."

ORS 656.273(6) provides that a claim for aggravation

"shall be processed by the insurer or self-insured employer in accordance with the provisions of ORS 656.262, *except that the first installment of compensation due under ORS 656.262 shall be paid no later than the 14th day after the subject employer has notice or knowledge of medically verified inability to work* resulting from a compensable worsening * * *." (Emphasis supplied.)

The statutes indicate that the processing of an aggravation claim should be identical to the processing of an initial claim, with one exception. In an initial claim, the first payment of compensation is due no later than the 14th day after the insurer has notice or knowledge of the claim. ORS 656.262 also provides that if, in an initial claim, the insurer requests

and does not receive from the claimant's attending physician verification of the inability to work, no time loss is due. In an aggravation claim, the first installment of compensation is due no later than the 14th day after the subject employer has notice or knowledge of a medically verified inability to work. This case turns on the significance of the differences in the two statutes with regard to the obligation to begin paying benefits for time loss.

■       The first issue is whether, for the purpose of triggering the employer's procedural obligation to begin paying benefits on an aggravation claim, "notice or knowledge of a medically verified inability to work" must come from the claimant's attending physician, or whether the claimant's inability to work may be "medically verified" by another source. ORS 656.273(6) does not provide expressly that medical verification must come from the attending physician, although the statute does require that the claim be processed under ORS 656.262, which, as we have noted, expressly requires that, *when sought by the employer*, medical verification must come from the claimant's attending physician. If the answer to our question depended exclusively on an interpretation of ORS 656.273(6) and ORS 656.262, it is possible that we would conclude that the employer's notice of a medically verified inability to work need not come from the claimant's attending physician. However, in 1990, the legislature enacted ORS 656.245(3)(b)(B), which provides:

> "A medical service provider who is not an attending physician cannot authorize the payment of temporary disability compensation."

By that statute, the legislature has expressly provided that authorization for time loss can come only from the claimant's attending physician. We conclude that ORS 656.245(3)(b)(B) applies to any claim for time loss, be it an initial claim or an aggravation claim; and that it applies not only with regard to substantive entitlement to benefits, but in this procedural context as well. Medical verification of an inability to work so as to trigger the insurer's obligation to begin paying benefits for time loss on an aggravation claim must come from the claimant's attending physician. Accordingly, we hold that Long could not have provided the medical verification of

claimant's inability to work, because he was not claimant's attending physician.

■ The Board did not regard the absence of express medical verification from claimant's attending physician as fatal to claimant's entitlement to benefits for time loss. Apparently drawing by analogy on the terms of ORS 656.262(4)(b), the Board held that, if SAIF doubted that claimant was disabled, SAIF had an obligation in its processing of the claim to seek medical verification of her inability to work. The Board found that, if SAIF had sought verification from Layman, who was claimant's attending physician at the time of the November 11, 1991, request for authorization for surgery, SAIF would have learned that claimant was disabled. Accordingly, the Board held that there was "sufficient medical verification" from an attending physician. The Board found that SAIF's duty to begin paying benefits began as of November 11, 1991, when, the Board concluded, SAIF should have sought verification from Layman. The Board further found that SAIF had unreasonably processed the claim and assessed a penalty pursuant to ORS 656.262(10).

We agree with the Board that, read in their context, the statutory provisions for the processing aggravation claims can be reasonably interpreted to place on the insurer a duty (analogous to that applicable with respect to an initial claim) to seek medical verification of an inability to work. Nonetheless, to hold that the obligation to begin paying time loss benefits on an aggravation claim can be triggered in the absence of medical verification of an inability to work would be contrary to the provisions of ORS 656.273(6). Although the Board found that SAIF acted unreasonably in failing to seek medical verification of claimant's inability to work on November 11, 1991, it does not follow that SAIF had a duty to begin paying benefits, because there was no medical verification of an inability to work. Additionally, because there were no benefits due, the Board erred in assessing a penalty.

Reversed.